UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Celeste D. Wood and Thomas M. Wood
Newbury, Vermont
                        Plaintiffs

        v.                        Case Number:  1:13-cv-00090-JD

Alice Peck Day Hospital, Lebanon, N.H.;
Cottage Hospital, Woodsville, N.H.;
Dr. Peter B. Sahlin, Bonita Springs, Florida; and
Medtronic, Inc., Northridge, California,
                        Defendants

_____

**PLAINTIFFS AMENDED COMPLAINT**
_____

NOW COME the plaintiffs, Celeste D. Wood and Thomas M. Wood, by and through their counsel, Kenneth M. Brown, Esquire, and submit their Amended Complaint as follows:

**PARTIES**

1.    Celeste D. Wood and Thomas E. Wood, husband and wife, are residents of Newbury, Vermont, residing at 793 Perini Road, 05051.  They have resided in Newbury, Vermont at all times relevant to this complaint.

2.    Alice Peck Day Memorial Hospital is a New Hampshire corporation with a principal place of business at 10 Alice Peck Day Drive, Lebanon, New Hampshire 03766.

    (A)    Cottage Hospital is a New Hampshire business entity with a principal place of business at Swiftwater Road, Woodsville, New Hampshire 03785.

    (B)    Dr. Peter B. Sahlin was at the relevant times a radiologist who practiced at Cottage Hospital.  Dr. Sahlin is now believed to reside at 24571 Woodsage Drive, Bonita

Springs, Florida 34134.

3. Medtronic, Inc. is a Minnesota corporation with a principal place of business at 18000 Devonshire Street, Northridge, California. It regularly does business within the State of New Hampshire. Its New Hampshire agent for service of process is CT Corporation System, 9 Capitol Street, Concord, New Hampshire.

**JURISDICTION**

4. There is complete diversity among the parties as required by 28 USC §1332(a).

5. The amount in controversy exceeds $75,000 as required by 28 USC §1332(a)(1).

**STATEMENT OF FACTS**

6. Celeste Wood has suffered from elevated intracranial pressure, also known as pseudotumor cerebri, since approximately 1994. In the course of treatment over the years, she had received several shunts, or drains, to relieve intracranial pressure.

Several of the surgeries to place these shunts have been performed by Dr. Joseph Phillips.

7. (A) In late January, 2010, Celeste visited her primary care physician, Dr. Patricia Pratt. Dr. Pratt ordered a CAT scan at the Cottage Hospital. A few days after the CAT scan, Dr. Pratt's office orally advised that everything was normal.

Unbeknownst to the Woods, the CAT scan report included language that the wires to Mrs. Wood's pacemaker were in place. Mrs. Wood did not have a pacemaker; what the CAT scan revealed was a broken catheter part that had traveled to Mrs. Wood's heart. Cottage Hospital's imaging department knew, or reasonably should have known, that Mrs. Wood did not have a pacemaker and that further investigation was required.

(B) Dr. Sahlin, as the radiologist who conducted the CT scan and

misinterpreted its results, knew or reasonably should have known, that Mrs. Wood did not have a pacemaker and that further investigation was required.

8. Mrs. Wood saw Dr. Phillips in late February, 2010. Without specific explanation, he ordered that Mrs. Wood be hospitalized for further surgery.

9. On March 4, 2010, Dr. Phillips performed surgery to examine the catheter which he had placed in Mrs. Wood in June, 2009. Dr. Phillips is believed to have surgically opened a small port in Mrs. Wood's anterior right clavicle. At some point, Dr. Phillips emerged from surgery to tell Thomas Wood that a piece of the catheter previously placed was missing.

10. Mrs. Wood was taken for a CAT scan, and the Woods learned for the first time that the catheter had broken and that the missing piece of catheter had migrated through an artery to Mrs. Wood's heart. Dr. Phillips placed a temporary shunt from her brain into Mrs. Wood's peritoneum.

11. Mrs. Wood was transported by ambulance to the Dartmouth Hitchcock Medical Center in Lebanon, N.H. There, the broken piece of catheter was removed from Mrs. Wood's heart. Upon information and belief, the subject catheter was manufactured by Medtronic, Inc. from Lot C37608, Reference 43103.

12. After a week at home, Mrs. Wood still was feverish and felt poorly. She saw Dr. Phillips who again admitted her to Alice Peck Day Hospital. During surgery, he discovered that she had a subcutaneous leak at a connection site of the catheter. He put in a new connector.

13. In the following week, Mrs., Wood developed an infection at the incision site on the anterior chest. Dr. Phillips again admitted her to Alice Peck Day where attempts were made to treat the infection., During a 28 day hospitalization, Mrs. Wood had at least two surgical

procedures to combat the infection; she received large doses of antibiotics.

14. After her discharge, Mrs. Wood developed severe rashes which required dermatological consultations and treatments.

## COUNT I
## AGAINST MEDTRONIC, INC.
## STRICT LIABILITY

15. In a plea of strict liability, for that defendant did manufacture and put in to the stream of commerce a certain catheter tube, Lot C37608, Ref. 43103, that was defectively manufactured, in that it did not perform properly and fractured during normal use for its intended purpose.

As a result of defendant's defective product, plaintiffs were caused to undergo considerable painful and stressful treatment, incur large medical bills and suffer a loss of enjoyment of life.

## COUNT II
## ALICE PECK DAY MEMORIAL HOSPITAL
## MEDICAL NEGLIGENCE

16. In a plea of the case, for that defendant owed duties to all patients who used its facilities to use reasonable care in the preparation and performance of its facilities for the provision of medical services; that defendant breached its duties on several occasions, to wit:

   a) it provided a defective catheter to Dr. Phillips for insertion into his patient;

   b) it provided a defective catheter connection to Dr. Phillips to insert into his patient;

   c) it provided a non-sterile environment for the performance of surgery; and

   d) it failed to meet the standard of care to insure that its surgical facilities were safe for use.

These violations of the standard of care caused plaintiffs to suffer physical and emotional pain and emotional distress, caused them to incur medical bills and caused plaintiffs to lose enjoyment of life.

### COUNT III
### COTTAGE HOSPITAL
### MEDICAL NEGLIGENCE

17. (A) In a plea of the case, for that Cottage Hospital owed a duty to use reasonable care in the services it provided to patients; defendant breached that duty by incorrectly interpreting artifacts seen on a CAT scan done on plaintiff as pacemaker wires; defendant knew, or reasonably should have known, that plaintiff did not have a pacemaker; it should have alerted Dr. Pratt for a need to determine the actual nature of those artifacts; as a result of defendant's breach of the standard of care, plaintiff was caused to endure pain and emotional distress, to her damage.

### COUNT IV
### DR. PETER SAHLIN
### MEDICAL NEGLIGENCE

17. (B) In a plea of the case, for that Dr. Peter B. Sahlin owed a duty to use reasonable care in the services he provided to patients. Dr. Sahlin breached that duty by incorrectly interpreting artifacts seen on a CT scan he directed as pacemaker wiring; defendant knew or reasonably should have known that Mrs. Wood did not have a pacemaker; he should have alerted Dr. Pratt and plaintiffs to determine the actual nature of those artifacts; as a result of defendant's breach of the standard of care, plaintiff was caused to endure pain and emotional distress, to her damage.

17. (C) At all relevant times, Dr. Sahlin was the agent of Cottage Hospital.

Neither Dr. Sahlin nor Cottage Hospital made any efforts to apprise plaintiffs of Dr. Sahlin's status as an independent contractor. Cottage Hospital is liable for Dr. Sahlin's conduct under the doctrines of agency and *respondeat superior*.

### COUNT V
### LOSS OF CONSORTIUM
### ALL DEFENDANTS

18. In a plea of the case, for that Thomas Wood is the spouse of Celeste Wood and, at all relevant times, he was entitled to the care, comfort and society of his wife; as a direct result of defendants misconduct, plaintiff was caused to endure emotional pain, mental distress, lost the services of his wife as a homemaker, lost her care and companionship, in whole or in part, for about two years, to his damage.

WHEREFORE, plaintiffs pray this Honorable Court:

A. Schedule a jury trial of plaintiffs' Complaint;

B. Allow such damages as may be awarded by such jury; and

C. For such other and further relief as may be just and equitable.

Respectfully submitted,
Celeste D. Wood and Thomas M. Wood
By their attorney

Date: March 26, 2013

　　　/s/ Kenneth M. Brown
Kenneth M. Brown, NH Bar #143
47 Factory Street
Nashua, NH  03060-3310
(603)-882-1600
ken@attykenbrown.com

<u>CERTIFICATION OF SERVICE</u>

       I certify that on the 26th day of March, 2013 a copy of the foregoing Plaintiffs' Amended Complaint was sent by first class mail to Michael A. Pignatelli, Esquire, Rath, Young & Pignatelli, 20 Trafalgar Square, Nashua, NH 03063, counsel for Cottage Hospital; Kevin M. Fitzgerald, Esquire, Nixon Peabody LLP, 900 Elm Street, Manchester, NH 03101, counsel for Medtronic, Inc.; Alice Peck Day Memorial Hospital, 10 Alice Peck Day Drive, Lebanon, NH 03766; and Dr. Peter B. Sahlin, 24571 Woodsage Drive, Bonita Springs, FL 34134.

          /s/ Kenneth M. Brown